THE RICHARDSON PRESS, Appellant, *v.* ANDREW ALBRIGHT, JR., Respondent.

**Frauds (Statute of) — verbal promise to pay debt of another — when evidence insufficient to sustain claim that defendant became a principal debtor.**

1. When the primary debt continues to exist, the promise of another to pay the debt may be original or it may not be, but it is regarded as original only when the party sought to be charged clearly becomes, within the intention of the parties, a principal debtor primarily liable.

2. A promise may still be collateral, when the promisor is under no present duty to pay, even though the new consideration moves to the promisor and is beneficial to him. The elements of beneficial interest and new consideration must be present to take the case out of the statute, but the inquiry remains whether the consideration is such that the promisor thereby comes under an independent duty of payment, irrespective of the liability of the principal debtor.

3. Plaintiff bases its action on a verbal promise by defendant to pay the debt of another. On examination of the evidence it appears, upon the application of the foregoing principles, that it is not sufficient to sustain the claim of plaintiff that defendant became a principal debtor; hence the promise was not sufficient to satisfy the Statute of Frauds.

*Richardson Press* v. *Albright*, 172 App. Div. 954, affirmed.

(Argued October 31, 1918; decided November 19, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 23, 1916, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George T. Hogg* for appellant. The defendant had an interest of his own to subserve. His promises rested on a new consideration, forbearance or time to pay past indebtedness and the publication of future issues of

" Dogs in America," which moved toward him and was beneficial to him. They were original, therefore, and did not need to be in writing. (Const. of New York, art. 1, § 2; *Faber* v. *City of N. Y.*, 213 N. Y. 411, 414, 415; *Kraus* v. *Birnbaum*, 200 N. Y. 130, 133; *R. & L. Co.* v. *Metz*, 165 App. Div. 533; 215 N. Y. 695; *Schwoerer & Sons, Inc.*, v. *Stone*, 130 App. Div. 796; 200 N. Y. 560; *Richardson Press* v. *Vandergrift*, 165 App. Div. 180; *Davis* v. *Patrick*, 141 U. S. 479; *Kelsey* v. *Munson*, 198 Fed. Rep. 841; *Guaranty Trust Co.* v. *Koehler*, 195 Fed. Rep. 669, 679; *Choate* v. *Hoogstraat*, 105 Fed. Rep. 713; *Title G. & T. Co.* v. *Haven*, 214 N. Y. 468.) There was a " note or memorandum " of the defendant's promise to pay the plaintiff, particularly for subsequent issues of " Dogs in America," and it was subscribed by the defendant. The requirements of the Statute of Frauds are fully met, if applicable. (*Spiegel* v. *Lowenstein*, 162 App. Div. 443; *Poel* v. *Brunswick-Balke-Collender Co.*, 159 App. Div. 365; *Guaranty Trust Co.* v. *Koehler*, 195 Fed. Rep. 669; *Choate* v. *Hoogstraat*, 105 Fed. Rep. 713; *Quaker Oats Co.* v. *North*, 102 Misc. Rep. 108; *Brauer* v. *O. S. N. Co.*, 178 N. Y. 339; *Evansville Nat. Bank* v. *Kaufmann*, 93 N. Y. 273; *Nat. Park Bank* v. *Seaboard Bank*, 114 N. Y. 28; *San Remo C. M. Co.* v. *Moneuse*, 149 App. Div. 26.)

*Charles Thaddeus Terry* for respondent. There is no evidence in the record sufficient to have warranted the submission to the jury of the question whether the defendant made an original promise. (*White* v. *Rintoul*, 108 N. Y. 222; *Mallory* v. *Gillett*, 21 N. Y. 412; *Roscoe Lumber Co.* v. *Reynolds*, 124 App. Div. 539; *Mechanics & Traders Bank* v. *Stettheimer*, 116 App. Div. 198; *Halsted* v. *Pelletreau*, 101 App. Div. 125; *Ackley* v. *Parmenter*, 98 N. Y. 425; *O'Brien* v. *Mendel*, 132 N. Y. Supp. 426; *Belknap* v. *Bender*, 75 N. Y. 446; *Cardeza*

v. *Bishop,* 54 App. Div. 116; *Duffy* v. *Wunsch,* 42 N. Y. 243; *Millard* v. *Steers,* 9 App. Div. 419; *McRoberts* v. *Mathews,* 18 App. Div. 624.) The plaintiff cannot recover on the theory that the promise was a collateral one, because there was no note or memorandum in writing thereof, signed by the defendant, sufficient to satisfy the Statute of Frauds. The letter signed by the defendant was tentative and not final; it altogether fails to express the terms of any agreement, and in particular fails to show the consideration for any promise which it may be construed to contain. (*Poel* v. *B. B. C. Co.,* 216 N. Y. 310; *Brauer* v. *Oceanic S. N. Co.,* 178 N. Y. 339; *Drake* v. *Seaman,* 97 N. Y. 230; *Barney* v. *Forbes,* 118 N. Y. 580.)

POUND, J. Plaintiff declares on a balance of about four thousand dollars alleged to be due on account for materials furnished to Oceanic Publishing Company, a corporation, for which it is alleged that defendant agreed to pay. The complaint was dismissed at the close of plaintiff's evidence and the question is whether sufficient evidence was adduced to establish *prima facie* defendant's liability as a primary principal debtor.

Defendant was a large stockholder in Oceanic Publishing Company, which was publishing a semi-monthly periodical entitled "Dogs in America" which plaintiff was printing for it. On February 29, 1912, plaintiff brought to the attention of defendant by letter the fact that it had been carrying a large account with his company which was past due and asked him to make some arrangement for the systematic payment of it. On March 1 defendant answered, explaining that he had nothing to do with the direct management of the company; that the president, Vandergrift, conducted the business; that he expected that Vandergrift would soon resign and allow him to assume the management of the

paper and that he would be glad to meet the representative of plaintiff to make arrangements for the payment of the back account due it and for future issues. This letter contains no promise to pay plaintiff the debt of Oceanic Publishing Company, but it contains a personal assurance that defendant will furnish Oceanic Publishing Company money to pay for each future issue.

The parties met on March 4, and Aberle, plaintiff's representative, testifies as follows:

" I met Mr. Albright on that morning, and Mr. Albright stated to me in substance — at least he said directly, ' I am now in charge of the Oceanic Publishing Company. I will run it hereafter, Mr. Vandergrift has withdrawn.' He inquired about the size of the account and I had a statement with me, which I showed him. The exact figure I haven't here now. It was something like $3,000. We discussed the thing generally, and he said, ' Well, you can't expect me to pay all of this.' He says, ' I will agreed to pay you $1,500, in three payments, $500 weekly. I will further agree to pay each issue hereafter in cash, before you send it out.' This I want to say because we had notified the publishing company that we would not publish hereafter unless the cash was in evidence. That was really in answer to our request. Mr. Davidson, the treasurer of the company, was then present in the office. I asked Mr. Albright to give me this in writing, and he said, ' No, I am an honorable man, my word is my bond. Besides, you have Davidson here as a witness.' " It later appeared that the money was to be forwarded by defendant to Mr. Davidson, the treasurer of the Oceanic Company.

No other promise, original or collateral, was ever made by defendant to plaintiff to pay the debt of Oceanic Publishing Company, and if the promise is to answer for its debt, it is unenforcible, because no note or memorandum in writing was made, sufficient to satisfy the requirements of the Statute of Frauds.

Assuming that defendant in the interview above quoted was speaking for himself and not merely as the representative of his company, it may be said that some of the elements of an original, enforcible, absolute promise on his part to pay $1,500 of the back indebtedness and to pay for future issues unquestionably appear. Technically, at least, defendant had a substantial interest to subserve in making the promise. He had — or at least he said that he had — taken control of Oceanic Publishing Company, and was about to reorganize it. It was his desire to have the plaintiff continue to issue " Dogs in America " and perhaps it was a benefit to him to have the periodical appear regularly without a change of publishers. Thus the element of a new consideration moving to him was present. But his beneficial interest was at best remote. Unquestionably the principal debt was not extinguished and credit was still given and to be given to Oceanic Publishing Company.

On this evidence it is urged that defendant became a primary debtor with Oceanic Publishing Company (*White v. Rintoul*, 108 N. Y. 222; *First N. Bank v. Chalmers*, 144 N. Y. 432; *Schwoerer & Sons, Inc., v. Stone*, 130 App. Div. 796; affd., 200 N. Y. 560; *R. & L. Co. v. Metz*, 165 App. Div. 533, 537, 538; affd., 215 N. Y. 695), and that plaintiff was entitled to recover.

But a promise may still be collateral, even though the new consideration moves to the promisor and is beneficial to him. The elements of beneficial interest and new consideration must be present to take the case out of the statute, but the inquiry remains whether the consideration is such that the promisor thereby comes under an independent duty of payment; irrespective of the liability of the principal debtor. (*White v. Rintoul, supra,* at page 227.) The implied consideration, as indicated by the subsequent dealings of the parties, is that plaintiff will continue to give credit primarily to Oceanic Publishing Company. Plaintiff was notified on March 14,

1912, that defendant admitted no responsibility as to its claim, and it is indisputable that plaintiff thereafter considered that the primary duty of payment remained with the original debtor. It continued to furnish materials and render services to Oceanic Publishing Company, publishing its periodical down to the issue of September 19; it kept no account with defendant on its books; made but one demand on him to furnish money in advance of an issue of the periodical, and that was for the issue of March 7, which brought forth the denial of responsibility; took assignments of accounts from Oceanic Publishing Company; took assignments of stock under an agreement which gave it control of Oceanic Publishing Company; took possession of all its personal property, books and papers, and turned to defendant only when the resources of the original debtor had been completely exhausted. The tenor of the entire transaction was that defendant purposed to help out the Oceanic Company and verbally promised to pay its debts.

When the primary debt continues to exist, the promise of another to pay the debt may be original or it may not be, but it is regarded as original only when the party sought to be charged clearly becomes, within the intention of the parties, a principal debtor primarily liable. If we pick a few phrases from the context, we may draw the conclusion that defendant intended to assume such a relation to plaintiff, but on all the evidence we find but one principal primary debtor and that is Oceanic Publishing Company. The ancient purpose of the Statute of Frauds was to require satisfactory evidence of a promise to answer for the debt of another person and its efficacy should not be wasted by unsubstantial verbal distinctions.

The judgment should be affirmed, with costs.

HISCOCK, Ch. J., CHASE, COLLIN, CUDDEBACK, CARDOZO and ANDREWS, JJ., concur.

Judgment affirmed.